**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:14-cr-00287-KJD-CWH |
| Plaintiff, | |
| v. | |
| ANDREW JOHN GIBSON, | **REPORT & RECOMMENDATION** |
| Defendant. | |

Before the Court is pro se Defendant Andrew Gibson's Motion to Suppress Evidence (ECF No. 94), filed October 11, 2016. The Government Responded (ECF No. 107), on November 5, 2016. Gibson responded (ECF No. 121), on November 29, 2016. Additionally, he filed a Motion in Support of Suppression of Warrant/Final Response (ECF No. 113), on November 17, 2016. The Government filed a Motion to Strike this untimely motion (ECF No. 115), on November 22, 2016, and alternatively, requested the opportunity to respond to merits of the motion. (ECF No. 115). The Court construes Gibson's "Final Response" as a reply, and will consider it as such, and authorized the Government to respond because Gibson made new arguments not contained in his original motion to suppress. With Court permission, the Government responded (ECF No. 127) on December 7, 2016. Gibson filed a document which the Court construes and will consider as a surreply (ECF No. 129), filed December 13, 2016. The Court conducted an evidentiary hearing on December 1, 2016. (ECF No. 125). Trial is currently scheduled to commence on April 24, 2017. (Order (ECF No. 128).)

## I. BACKGROUND AND ANALYSIS

The grand jury indicted Gibson on August 27, 2014, alleging that from about June 19, 2013 until November 21, 2013, he did knowingly receive and distribute child pornography and any material that contains child pornography, as defined in Title 18, United States Code, § 2256(8), that had been shipped and transported in and affecting interstate and foreign commerce by any means,

1

1  including by computer, and that had been shipped and transported using any means and facility of
2  interstate and foreign commerce, in violation of Title 18, United States Code, § 2252A(a)(2) and (b).
3  (Indictment, (ECF No. 1).)
4        Gibson moves to suppress the evidence obtained by a warrant issued on November 20, 2013
5  because (1) the issuing judge did not sign the original search warrant, (2) the officers failed to
6  execute the search warrant the day they obtained it, (3) he was prejudiced by the delay in searching
7  of the hard drives, and (4) the seized devices were not immediately returned to him.  In his reply
8  Gibson also argues that (5) the search warrant was the result of an unauthorized wire tap of his
9  computer, (6) that the affidavit failed to particularly describe the place to be searched and the persons
10 or things to be seized, (7) and that the affidavit contains false statements.  The Government opposes
11 the motion, arguing that the warrant was properly signed, executed according to its terms, that
12 Gibson did not request the return of his electronic devices, and he suffered no prejudice.
13 Additionally, the Government argues that no wire tap occurred, and that Gibson had no reasonable
14 expectation of privacy in the information revealed in his publicly shared files.
15       The Fourth Amendment addresses "the right of the people to be secure in their persons,
16 houses, papers, and effects against unreasonable searches and seizures." U.S. Const. Amend. IV.
17 The Fourth Amendment protects reasonable and legitimate expectations of privacy. *Katz v. United*
18 *States*, 389 U.S. 347 (1967).  It protects "people not places." *Id*.  Evidence obtained in violation of
19 the Fourth Amendment and evidence derived from it may be suppressed as the "fruit of the
20 poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963).
21       **A.  The issuing judge signed the search warrant**
22       At the hearing, the Government introduced evidence from Detective Shannon Tooley, a Las
23 Vegas Metropolitan Police detective who prepared the affidavit and search warrant which authorized
24 the seizure of evidence in Gibson's residence.  Detective Tooley authenticated the search warrant
25 obtained from Judge Allf on November 20, 2013.  Gov't Exhibit 1.  She testified that she executed
26 the search warrant on November 21, 2013, and seized various items pursuant to the warrant.  She
27 further testified that on April 2, 2014, law enforcement completed forensics on the devices, and that
28

evidence of child pornography was discovered.

Judge Allf's signature appears on the affidavit and the warrant. *Id*. Gibson first argues that "the warrant does not appear to have an actual signature on it," but rather only has the printed name of Nancy Allf.[1] Detective Tooley testified that she signed the affidavit in Judge Allf's presence, saw Judge Allf sign the warrant, and recognized the signature from her previous experience with Judge Allf. Gibson's unsupported opinion that "the warrant does not appear to have an actual signature on it" is not sufficient to undermine the warrant. The Court finds that the warrant is properly approved and signed.

### B. The search warrant was timely executed

Gibson next argues that the seizure of evidence was illegal because the search warrant was not executed on the day it was signed. The Government correctly points out that Nevada law requires that, unless otherwise directed, a warrant be served "between the hours of 7 a.m. and 7 p.m," within 10 days of its issuance. Nev. Rev. Stat. §§ 179.045, 179.075(1).[2] Gibson identifies no legal basis to support his argument that a search warrant must be served the day it is issued. The text of the search warrant does not require that it be served the same day, nor does the affidavit contemplate such a necessity. Gov't Exhibit 1. The Court finds that in the absence of an order to the contrary, the execution of the search warrant on the day after it was issued was not untimely.

### C. Gibson shows no prejudice from the delay in searching the seized hard drives

Gibson next argues that he was prejudiced by a 120-day delay of the Las Vegas Metropolitan Police Department to search the seized hard drives, which he argues may have led to contamination of the evidence. He argues that although the warrant does allow a review of the evidence at a time after its seizure, the copying of devices must be conducted immediately on site, or within 14 days of the execution of the search warrant. The Government disagrees and cites the plain language of the

---

[1] Gibson introduced examples of signature which are not the same as a printed name. Def. Exhibit A.

[2] Nevada state law applies because the warrant was issued by Judge Allf, a Nevada state judge. Federal Rule of Criminal Procedure 41 is similar. *See* Rule 41(e)(2)(A)(I)(warrants should be served during daytime, within 14 days of issue.)

3

affidavit, which anticipates the need for a later search of the computers. It also cites Fed.R.Crim.P. 41(e)(2)(B) regarding the execution of federal warrants seeking electronically stored information, which provides that the time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.

Here, the computers were timely seized in accordance with the search warrant, on November 21, 2013, the day after the warrant was issued, and the forensics testing was completed on April 2, 2014. Both the affidavit and search warrant recognized the need for off-site copying and examination. *Id.* The affidavit indicates that the copying and searching of digital evidence "can be a lengthy and arduous process that takes a significant amount of time to complete, which is exacerbated by the large volumes of data that is capable of being stored in a digital medium." *Id*. at 14. The affidavit also indicates that "current case loads and differing case assignment priorities are likely to cause some searches to be halted while other cases of higher priorities are re-assigned for priority analysis." *Id*. The affidavit indicates that "it is not unusual for some forensic analysis searches to take several months before they are completed from beginning to end." *Id.* The search warrant indicates that Affiant "is given authorization to remove and search any items of digital related evidence to a location suitable for the analysis of this evidence with the LVMPD." *Id*, at 17. The warrant did not contain any time limit for copying or for off-site review of the devices. *Id*., at 16-21. Gibson does not allege any actual impropriety in the copying and searching of the devices, or any actual prejudice resulting from the delay. The Court therefore finds that the time between seizure and search of the hard drives did not violate the terms of the search warrant or prejudice Gibson.

**D. The failure to return the electronic devices does not justify suppression**

Gibson argues that he was prejudiced because the seized electronic devices were not immediately returned to him, he was left without his computer for a year, and the officers unnecessarily took his Xbox 360s. The Government points out that Gibson failed to request the return of the devices under applicable state and federal law, and in any case would no longer be

entitled to their return under the Adam Walsh Act. Gibson provided no evidence indicating that he requested the return of his electronic devices, but even if he did, he provides no authority to support the proposition that the failure to return electronic devices which allegedly contain pornographic evidence should result in suppression of that evidence simply because the electronic devices were not returned. The failure to return the electronic devices under these circumstances does not justify the suppression of the evidence.

### E. The search warrant was not the result of an unauthorized wire tap

Gibson next argues that the search warrant was the result of an unauthorized wire tap of his computer by Detective Tooley. The Government responds that Detective Tooley obtained the evidence of child pornography from Gibson's computer from files which Gibson had made public, and was not intercepted. Additionally, it argues that Gibson had no expectation of privacy with regard to the material searched because he had made it publicly accessible.

The affidavit which supported the issuance of the search warrant in this case described in great detail the investigation which lead to the discovery of suspected child pornography. *Id.* In summary, law enforcement officers were able to discover and download publicly shared child pornography files from Gibson's publicly shared "Ares" program files. According to the affidavit, Ares is a program which allows the public to access, through peer-to-peer sharing, electronic folders stored one's computer. *Id.* Gibson had no reasonable expectation of privacy in the child pornography files once he decided to install and use file sharing software, thereby opening his computer to anyone else with the same freely available program. *United States v. Ganoe*, 538 F.3d 1117, 1127 (9th Cir. 2008). In short, accessing files made available through file-sharing software does not constitute a search, and so the Fourth Amendment is not implicated.

Nor did the collection of shared files from Gibson's computer constitute a wiretap. "The Wiretap Act makes it an offense to intentionally intercept any wire, oral, or electronic communication." *Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 876 (9th Cir. 2002) (internal quotation marks and alterations omitted). An "electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or

5

in part by a wire, radio, electromagnetic, photoelectronic or photooptical system." 18 U.S.C. § 2510(12). "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Id.* at § 2510(4). Relying on the definition of "intercept," the Ninth Circuit has indicated that for an electronic communication to be "intercepted in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage." *Konop*, 302 F.3d at 878 (emphasis added). Because the files discovered on Gibson's computers were not acquired during transmission, the Wiretap Act is not implicated, and no unauthorized wire tap occurred.

### F. The warrant particularly describes the subject of the search and seizure

Gibson next argues that the affidavit fails to particularly describe the place to be searched and the persons or things to be seized, and that it is boilerplate. Contrary to his assertion, the warrant specifically describes, on its face, the property to be seized and its location. *See* Gov't Ex 1, at pp. 16-17. Moreover, Gibson provides no argument that any evidence was seized which was outside the scope of the warrant.[3] Accordingly, the warrant adequately describes the place to be searched and the things to be seized, and it was executed according to its terms.

### G. The affidavit establishes probable cause for the warrant

Gibson argues that the affidavit contains false statements which render the affidavit invalid. He additionally argues that the affidavit does not contain sufficient facts to support the search warrant, and that the affidavit relevant to his case is similar to an affidavit in another case. He did not provide the other affidavit.

In *Franks v. Delaware*, the Supreme Court established a two-prong test for challenging the sufficiency of a search warrant affidavit. 438 U.S 154. The Court noted that there is a "presumption of validity with respect to the affidavit supporting the search warrant." *Id.* at 171. A defendant is entitled to an evidentiary hearing on the validity of the affidavit underlying a search warrant if he can

---

[3] Gibson mentions that the seizure of his Xbox 360 was improper because he believes that another inmate's game units were not seized. In the absence of evidence from Gibson, however, that the Xbox 360 is not an electronic/digital devices capable of storing electronic data, the game units are within the scope of the warrant. Gov't Exhibit 1, at 1.

make a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions and (2) the affidavit cannot support a finding of probable cause without the allegedly false information. *Id*. at 155-56. "To justify a hearing, a defendant must make specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and accompany such a claim with a detailed offer of proof." *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008) (citation omitted). "A hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one. Rather, the defendant must demonstrate that a 'significant, disputed factual issue' exists such that a hearing is required." *United States v. Martin*, 2010 WL 5575323 *7 (D. Nev.) (*citing United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990)).

Even if a defendant makes the preliminary showing, that is not enough, standing alone, to entitle a defendant to a *Franks* hearing. A defendant must also show that the affidavit would not be sufficient to support a finding of probable cause even if it was purged of its falsities and supplemented by the omissions. *See United States v. Stanert*, 762 F.2d 775, 782 (9th Cir. 1985) (citing *Franks*, 438 U.S. at 171-72). "The effect of misrepresentations and omissions on the existence of probable cause is considered cumulatively." *Stanert*, 762 F.2d at 782 (citation omitted). Thus, the judge reviewing a request for a *Franks* hearing must determine whether the affidavit, once corrected, would provide a magistrate judge with the basis necessary to conclude that probable cause exists. *Id*.

Probable cause determinations are made by viewing the "totality of the circumstances" set forth in the affidavit. *See Illinois v. Gates*, 426 U.S. 213 (1983). Probable cause is a fluid concept not easily reduced to a set of legal rules. *Id*. Consequently, the task of a magistrate judge is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 238. A magistrate judge's determination of probable cause is accorded significant deference, *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995), and there is a "presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438

7

U.S. at 171.

After careful consideration, the Court finds that Gibson has not met his burden to demonstrate that he is entitled to a *Franks* hearing.[4] The first requirement for a *Franks* evidentiary hearing is that the defendant make specific allegations that the affidavit contains intentionally or recklessly false statements or misleading omissions. *Craighead*, 239 F.3d at 1080. Gibson discusses several aspects of the affidavit which he disagrees with, and alleges that because the condominium which was searched has three stories rather than two, the affidavit is false. He also alleges that the affidavit statement that pornography was found on the computer with the particular IP address is false because the "IP address in the affidavit is a modem/Cox IP address and not a PC IP address." Gibson has not provided reliable documentation in support of his allegations. "When challenging a warrant affidavit pursuant to *Franks*, the defendant must not only specify which portions are false, but must also furnish affidavits or other reliable documentation in support of his challenge or satisfactorily explain the absence of such supporting documentation." *See United States v. Fowlie*, 24 F.3d 1059, 1066 (9th Cir. 1994) (citation omitted). The failure to do so may result in the motion being denied. *See e.g.*, *United States v. Ruddell*, 71 F.3d 331, 334 (9th Cir. 1995).

Here, Gibson makes no argument that the residence address which was searched was not the same address listed in the search warrant. Nor does he argue that the IP address discussed in the affidavit was not associated with the address which was searched. Assuming, *arguendo*, that the affidavit is incorrect as to the number of stories in the searched residence the judge reviewing a request for a *Franks* hearing must determine whether the affidavit, once corrected, would provide the basis necessary to conclude that probable cause exists. *Stanert*, 762 F.2d at 782 (citation omitted). Gibson cannot meet the second prong of the analysis, which is that the affidavit cannot support a finding of probable cause without the allegedly false information. To the contrary, the Court has no difficulty finding that even if the affidavit did not contain information regarding the number of

---

[4] The Court made this finding at the beginning of the evidentiary hearing on this matter, which addressed both the present motion and Gibson's Motion to Suppress statements (Motion, (ECF No. 96).) *See* Minute Order (ECF No. 125).

stories in the condo, considering the "totality of the circumstances" the affidavit nevertheless supports a finding of probable cause, as determined by Judge Allf. Accordingly, the Court declines to conduct an evidentiary hearing on that basis.

## II.  CONCLUSION AND RECOMMENDATION

Accordingly, **IT IS HEREBY RECOMMENDED** that Gibson's Motion to Suppress Evidence (ECF No. 94) be **denied**.

## III.  NOTICE

This Report and Recommendation is submitted to the United States District Judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this Report and Recommendation may file a written objection supported by points and authorities within fourteen days of being served with this Report and Recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the District Court's Order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: January 11, 2017.

_____
C.W. Hoffman, Jr.
United States Magistrate Judge