**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 2:14-cr-00287-KJD-CWH |
| Plaintiff, ) | |
| v. ) | |
| ANDREW JOHN GIBSON, ) | **REPORT & RECOMMENDATION** |
| Defendant. ) | |

Before the Court is pro se Defendant Andrew Gibson's Motion to Suppress Evidence (ECF No. 96), filed October 11, 2016. The Government Responded (ECF No. 108), on November 15, 2016. Gibson responded (ECF No. 123), on November 29, 2016. The Court conducted an evidentiary hearing on December 1, 2016. (ECF No. 125)

**FACTUAL BACKGROUND**

The grand jury indicted Gibson on August 27, 2014, alleging that from about June 19, 2013 until November 21, 2013, he did knowingly receive and distribute child pornography and any material that contains child pornography, as defined in Title 18, United States Code, Section 2256(8), that had been shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, and that had been shipped and transported using any means and facility of interstate and foreign commerce, in violation of Title 18, United States Code, Section 2252A(a)(2) and (b). (Indictment, (ECF No. 1).)

Gibson moves to suppress the statement which he gave to a law enforcement officer because his invocation of his right to counsel during the interrogation was not honored.[1] The Government argues that Gibson was not in custody when he was interviewed, and if he was, he did not invoke his right to counsel.

---

[1] Gibson also indicates that he suffers from Aspergers Syndrome, but provides no argument regarding its relevance to the present motion, and therefore it will be disregarded.

1   Detective Shannon Tooley, who was assigned to the Internet Crimes Against Children Task
2   Force of the Las Vegas Metropolitan Police Department, testified that she obtained a search warrant
3   on November 20, 2013 to search the residence where it was suspected that child pornography had
4   been accessed.[2] During the execution of the search warrant on November 21, 2013, she interviewed
5   the residents of the home being searched and learned that Gibson was a relative who lived there, too.
6   After the search, Gibson arrived and parked his vehicle in the parking lot of the residence.

7   Detective Tooley testified that she was wearing civilian clothes and was driving an unmarked
8   police sport utility vehicle (SUV). She testified that when Gibson arrived, she approached him at his
9   vehicle, identified herself, explained that she had executed a search warrant, and asked if Gibson was
10  willing to speak with her. Gibson agreed to speak with her, and she escorted him to her SUV. She
11  testified that Gibson voluntarily entered her SUV, was not restrained, and that the doors of the SUV
12  were not locked. She testified that she decided to conduct the interview in the vehicle to ensure
13  privacy, and because it was raining and they were outside. She testified that she did not block
14  Gibson's vehicle with her own, and did not draw her service weapon at any time.

15  Detective Tooley testified that she began her discussion by advising Gibson that she was
16  investigating allegations of child pornography and that Gibson was not under arrest. After asking a
17  few general questions of Gibson, at 1640 hours, she began to record their conversation.[3] She began
18  the recorded interview by advising Gibson of his Miranda rights.[4] She testified that she did not
19  believe that Gibson was in custody, but that her normal practice is to administer Miranda rights
20  because child pornography is a serious matter. She testified that she used a normal conversational
21  tone during the interview, and that she did not threaten Gibson in any way. She testified that she was
22  not confrontational in her questioning and that at the beginning of her investigation, she did not

---

[2] Gibson has also moved to suppress the search warrant. (Motion, (ECF No. 94).)

[3] The recording was admitted into evidence. Gov't Ex 2. Additionally, a transcript of the interview, apparently prepared by Detective Tooley's office, was admitted over Gibson's objection that the transcript was not the best evidence of the conversation. Gov't Ex 3.

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

know of his involvement in the alleged downloading of pornography. During the interview, she asked Gibson about the use of "share programs" on his computer, and he indicated that he used such a program to obtain "porn." When asked what kind of porn, he said, "just porn." Detective Tooley asked him to be more specific. Gibson's answer is somewhat muffled on the recording, but based upon listening to the recording, Gibson says, "that one I probably want to talk to a lawyer about because I have to be careful about what I say." Detective Tooley said to Gibson that "if you don't want to talk with me, that's totally your choice, okay? I can't advise you on that. But if you want to talk to a lawyer before talking to me, that's fine. Like I said before, I didn't ..." Gibson then interrupted Detective Tooley and asked her to stop the recording, and she said, "sure, I can stop it." Then the recording was stopped.

Detective Tooley testified that during the estimated ten minutes the recorder was off, Gibson was visibly upset, cried, and asked her what he should do. Detective Tooley testified that she told Gibson that he could speak with an attorney, or call her back later. She testified that Gibson did not say that he wanted an attorney, nor did he say that he wanted to stop the interview.

After this discussion, Detective Tooley restarted the recording, and indicated, "this is Detective Tooley continuing the interview. Time is approximately 1659, with Andrew Gibson. Andrew, we were sitting here chatting for a few minutes, you deciding whether you want to speak with me or not. I'm going to re-advise you of your rights, okay?" She then advised Gibson again of his Miranda rights, and asked him if he wished to speak to her. Gibson said, "yes," and subsequently made incriminating statements which are the subject of his motion to suppress. Detective Tooley testified that she did not believe that Gibson invoked his right to counsel, and that had he done so, she would have stopped the interview. Towards the end of the interview, Detective Tooley and Gibson talked about his desire to get help that night, and she gave him some advice on where he might obtain counseling. At the conclusion of the interview, at 1723 hours, Gibson departed the scene.

On cross-examination, Gibson presented a report and recommendation issued in case of *United States v. Baker*, 2013 US Dist LEXIS 61432 (March 6, 2013) for the proposition that

3

Detective Tooley was dishonest. There, the Court conducted a Franks[5] hearing in a case involving a search warrant seeking child pornography. The Court found that Detective Tooley had been dishonest in the creation of an affidavit in that case because she falsely stated that "only one individual may use an Internet IP address at any given time" and that an IP address "is unique to a particular computer during an online session." The court noted that the statements, which were not corrected, were standard provisions used in LVMPD search warrant affidavits in 2008. The Court corrected the affidavit as required by Franks and its progeny, and decided that the search warrant was nevertheless sufficient to establish probable cause.

Detective Laura Cody, who was also assigned to the Internet Crimes Against Children Task Force of the Las Vegas Metropolitan Police Department, testified that she accompanied Detective Tooley during the execution of the search warrant. She was wearing civilian clothing, and drove an unmarked police vehicle. She testified that upon Gibson's arrival, neither she nor Detective Tooley blocked his vehicle or drew her firearm. She did not participate in the interview with Gibson.

Gibson testified that he arrived at his home on November 21, 2013, backed into his parking spot, and was getting ready to leave again when Detective Cody blocked his car in his parking spot. He testified that both Detectives Tooley and Cody had their guns drawn when they confronted him at his car. He testified that once he was outside the car, they explained that the search warrant had been executed, and they both walked him to Detective Tooley's vehicle. He testified that when asked about the porn on his computer, he said that "I want to talk to a lawyer on that one because I have to be careful what I say." He testified that he felt he had not choice but to talk to Detective Tooley, and that she never said he was free to leave or that he was under arrest.

## ANALYSIS

**A. Whether Gibson was in custody**

The obligation to administer *Miranda* warnings attaches once a person is subject to "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 445 (1966). "Custody" turns on

---

[5] *Franks v. Delaware*, 438 U.S. 154 (1978)

whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *U.S. v. Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir. 2005) (citing *United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002)). An officer's obligation to give a suspect *Miranda* warnings before interrogation extends only to those instances where the individual is "in custody." *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). The inquiry on whether an individual is in custody focuses on the objective circumstances of the interrogation, not the subjective views of the officers or the individual being questioned. *Stansbury v. California*, 511 U.S. 318, 323 (1994). The court must determine whether "the officers established a setting from which a reasonable person would believe that he or she was not free to leave." *United States v. Beraun-Panez*, 812 F.2d 578, 580 (9th Cir. 1987), *modified by* 830 F.2d 127 (9th Cir. 1987); *see also United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001). "Subjective criteria, such as the subject's age, education, intelligence, or previous experience with law enforcement, are not relevant to whether a reasonable person would feel free to leave, and therefore to whether a particular suspect is in custody." *See Yarborough v. Alvarado*, 541 U.S. 652, 668 (2004). The following factors are among those likely to be relevant to deciding the issue: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *Hayden*, 260 F.3d at 1066 (citing *Beraun-Panez*, 812 F.2d at 580). Other factors may also be pertinent to the ultimate determination whether a reasonable person would have believed he could freely walk away from the interrogators. The factors set forth in *Beraun-Panez* and *Hayden* are simply representative of those that frequently recur. *See Kim*, 292 F.3d at 973-974.

Here, Gibson testified that when he arrived at the residence, his car was blocked by Detective Cody, and he was confronted by both detectives with their guns drawn, both yelling at him to get out of the car. On the other hand, both Detectives Tooley and Cody denied that Gibson's car was blocked and that they drew their weapons. Detective Tooley testified that she only learned that day, upon receiving information from the residents, that Gibson lived at the house and may have had involvement in the subject of her investigation. Gibson had not resisted the officers, they knew his

identity and where he lived, and the crime being investigated was not a crime of violence. Gibson did not indicate that he was restrained during the interview – a logical result if he had been seized at gunpoint as he testified. Considering the seriousness of the charges in this matter, Gibson has significant motive to fabricate his testimony. The Court finds Gibson's testimony is not credible, and adopts Detective Tooley's version of the initial encounter, which is that she summoned Gibson by asking whether he was willing to speak with her, escorted him to her unmarked vehicle, and told him that he was not under arrest.[6]

Upon listening to the recording of the interview, the Court finds that Detective Tooley was not confrontational with Gibson. After receiving confirmation from Gibson that he understood his Miranda rights, she asked whether "it is ok if we talk," and Gibson agreed. Detective Tooley also asked Gibson, at the beginning of the interview, "are you cold, hot, do you want the car running or anything like that?" There is no evidence of any threats, and in fact, the questioning is polite. For example, at one point, Detective Tooley says, "I'm sorry to ask but some people define things differently, okay?" There is no evidence that Detective Tooley assumed an aggressive or coercive tone, or attempted to challenge Gibson's statements. *See United States v. Bassignani*, 575 F.3d 879, 884 (9th Cir. Cal. 2009) (Defendant found to be in custody when the interrogator adopted an aggressive, coercive, and deceptive tone). Detective Tooley's questions were open ended, not leading. In pertinent part, she asked what kind of share programs Gibson uses. When he identified the program, she asked what he had used the program for, and when he indicated, "porn," she asked what kind. The interview took place in the unmarked vehicle which had no indicia of being a police vehicle except for communications equipment, and the doors were not locked. The interview lasted about 45 minutes. Detective Cody did not participate, leaving Detective Tooley and Gibson alone.

It is true that although Detective Tooley advised Gibson that he was not under arrest, she also administered Miranda warnings. Gibson did not testify that he believed he was in custody because

---

[6] The Court gave some weight to the findings of falsity in the affidavit created by Detective Tooley in the *Baker* case, discussed *supra*, but ultimately finds Detective Tooley's testimony credible in this matter in spite of that finding.

he received his Miranda rights. A person knowledgeable of Miranda would know that the warning is required when the suspect being interviewed is in custody, and so a knowledgeable person might believe he was in custody because he received the warning. But this belief would be based upon education or experience held by the suspect, a subjective consideration not available under the objective test established by the Supreme Court. *See Yarborough v. Alvarado*, 541 U.S. 652, 668 (2004) (holding that subjective criteria, such as the subject's age, education, intelligence, or previous experience with law enforcement, are not relevant to whether a reasonable person would feel free to leave, and therefore to whether a particular suspect is in custody). Rather, two discrete inquires are required: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). Here, the Court finds that the objective circumstances of the interview lead to the conclusion that there was no formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. It is well established that police may stop a citizen at any time, request identification and other information, and even request permission to search so long as a reasonable innocent person in the citizen's position recognizes that he or she is free to leave or terminate the encounter. *See generally, Terry v. Ohio*, 392 U.S. 1 (1968). Detective Tooley did not establish a setting from which a reasonable person would believe that he or she was not free to leave. She did nothing, either in her actions to start a conversation with Gibson, or in her tone, or in the extent of her questioning, which indicated that she would not have heeded a request by Gibson to depart. *See generally*, *Beraun-Panez*, at 580. Accordingly, Gibson was not in custody at the time of his interview. Because the presence of both a custodial setting and official interrogation is required to trigger the Miranda right-to-counsel prophylactic, absent one or the other, Miranda is not implicated. *See Miranda*, 384 U.S. at 477-78. Gibson was not in custody during the interview, and so Detective Tooley had no obligation to stop the interview if Gibson requested an attorney.

**B. Whether Gibson unambiguously requested counsel**

Gibson provides no argument that he was not administered Miranda rights, or that he did not

initially waive his rights. The recording confirms these facts. Even assuming, *arguendo*, that Gibson was in custody, his statement would only be suppressed if he unambiguously invoked his right to counsel after he had waived his rights and agreed to speak with Detective Tooley. The Supreme Court has held that the right to counsel recognized in Miranda is sufficiently important to suspects in criminal investigations, so that it "requir[es] the special protection of the knowing and intelligent waiver standard." *Edwards v. Arizona*, 451 U.S. at 483. If the suspect effectively waives his right to counsel after receiving the Miranda warnings, law enforcement officers are free to question him. *North Carolina v. Butler*, 441 U.S. 369, 372-376 (1979). When a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation. *Edwards, 451 U.S. at 484-485*. This additional layer of protection is "designed to prevent police from badgering a defendant into waiving his previously asserted Miranda rights," *Michigan v. Harvey*, 494 U.S. 344, 350 (1990).

Whether counsel has actually been requested is an objective inquiry. *See Connecticut v. Barrett*, 479 U.S. 523, 529 (U.S. 1987). If a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, police are not required to cease questioning. *Davis v. United States*, 512 U.S. 452, 458 (U.S. 1994) (holding that the remark "maybe I should talk to a lawyer" was not a request for counsel). Rather, the suspect must unambiguously request counsel. As the Court has observed, "a statement either is such an assertion of the right to counsel or it is not." *Smith v. Illinois*, 469 U.S. at 97-98 (brackets and internal quotation marks omitted). The suspect must articulate his desire to have counsel present with clarity sufficient for a reasonable police officer in the circumstances to understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, the officers are not required to stop questioning the suspect. *See Moran v. Burbine*, 475 U.S. 412, 433, n. 4 (1986).

Here, Gibson's comment about a lawyer was in response to Detective Tooley's follow-up question to Gibson's admission that he had downloaded porn, which asked about what kind of porn he had obtained. His response was, "that one I probably want to talk to a lawyer about because I

8

have to be careful about what I say." Gibson's comment is his recognition that he probably should be careful as to that question, but is not a clear request for a lawyer. It is virtually the same as Davis's comment that "maybe I should talk to a lawyer," which the Supreme Court found to be ambiguous. *Davis,* 512 U.S. at 458. *See also United States v. Winsor,* 549 Fed. Appx. 630, 633 (9th Cir. 2013) (holding as ambiguous suspect's comments that "I think I'd like an attorney . . . . Shouldn't I have an attorney here?"); and *Clark v. Murphy*, 331 F.3d 1062, 1070-71 (9th Cir. 2002) (overruled on other grounds by *Lockyer v. Andrade*, 538 U.S. 63 (2003)) (holding that the state court's determination that the statements, "I think I would like to talk to a lawyer" and "should I be telling you, or should I talk to an attorney?" were ambiguous was not an unreasonable application of Supreme Court precedent).

Rather than ignoring his comment, Detective Tooley followed up by saying, "if you don't want to talk with me, that's totally your choice, okay? I can't advise you on that. But if you want to talk to a lawyer before talking to me, that's fine." Detective Tooley testified that she did not believe that Gibson had invoked his right to counsel. Gibson provided no testimony that Detective Tooley dissuaded him from requesting counsel during the time that the recorder was off, and the recording provides no such evidence. Nor did Gibson testify that Detective Tooley persuaded him to continue with the interview. It appears that Detective Tooley attempted to clarify Gibson's intent, not to coerce a waiver, and Gibson provides no explanation for his failure to clarify his intent. Accordingly, the Court finds that even if Gibson was in custody, he did not unambiguously invoke his right to counsel during his interview.

//
//
//
//
//
//
//

## CONCLUSION AND RECOMMENDATION

Accordingly, **IT IS HEREBY RECOMMENDED** that Gibson's Motion to Suppress Evidence (ECF No. 96) be **denied**.

## NOTICE

This Report and Recommendation is submitted to the United States District Judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this Report and Recommendation may file a written objection supported by points and authorities within fourteen days of being served with this Report and Recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the District Court's Order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: January 11, 2017.

_____
C.W. Hoffman, Jr.
United States Magistrate Judge